UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA ESTRADA-CONTRERA,[1]<br><br>              Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>              Defendant. | Case No. CV 14-7777-JPR<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING COMMISSIONER** |

**I.  PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed September 14, 2015, which the Court has taken under

---

[1] Plaintiff's last name appears to be Estrada-Contreras.  (See, e.g., AR 104.)  The Complaint, however, lists her last name as Estrada-Contrera.

1

submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

## II. BACKGROUND

Plaintiff was born in 1959. (Administrative Record ("AR") 167.) She completed third grade and worked as a janitor, kitchen attendant, and babysitter. (AR 31, 201.)

On February 4, 2011, Plaintiff submitted applications for SSI and DIB, alleging that she had been unable to work since April 15, 2009, because of "[h]ernia on spinal disk." (AR 167, 173, 201.) After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 104.) A hearing was held on September 13, 2012, at which Plaintiff, who was represented by counsel, testified, as did both a medical and a vocational expert. (AR 50-94.) In a written decision issued November 8, 2012, the ALJ found Plaintiff not disabled. (AR 23-33.) On August 7, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful

activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2009, the alleged onset date. (AR 25.) At step two, he concluded that Plaintiff had the severe impairments of obesity and lumbar-spine degenerative disc disease. (AR 26.) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 27.) At step four, he found that Plaintiff had the RFC to perform light work "in that she can exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects." (Id.) The ALJ found that Plaintiff could stand and walk up to six hours and sit up to six hours in an eight-hour workday with normal breaks. (Id.) She was precluded from work requiring "climbing of ladders, ropes or scaffolds, or crawling" and work requiring "climbing of ramps or stairs, stooping, kneeling or crouching" for "more than 20 percent of the workday." (Id.) Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a kitchen attendant. (AR 31.)[3] Accordingly, he found her not disabled. (AR 33.)

---

[3] The ALJ found in the alternative that Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 32.)

**V.   DISCUSSION**

<u>Any Error in the ALJ's Assessment of the Examining Physician's Opinion Was Harmless</u>

Plaintiff claims the ALJ erred in assessing the opinion of examining physician J. Pierce Conaty. (J. Stip. at 5.) For the reasons discussed below, remand is not warranted.

A.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. <u>Id.</u>

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u> (citing <u>Lester</u>, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citing <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam)). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

1 conclusory, and inadequately supported by clinical findings."
2 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord
3 Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th
4 Cir. 2004).

B. Relevant background

Dr. Conaty, a board-certified orthopedic surgeon, performed a consultative examination of Plaintiff on May 16, 2011. (AR 251-55.) He agreed with the diagnoses indicated on the MRIs and x-rays he reviewed — namely, degenerative disc disease at L4-L5 and lumbosacral spondylolisthesis.[4] (AR 254-55.) Dr. Conaty observed, among other things, that Plaintiff had positive Waddell's signs.[5] (AR 254.) He noted that Plaintiff's seated straight-leg raising was 80 degrees bilaterally but her supine straight-leg raising was 20 degrees on the right and 10 degrees

---

[4] Spondylolisthesis is a condition in which a vertebra in the spine slips forward out of its proper position onto the vertebra below it. See Spondylolisthesis, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/001260.htm (last updated Sept. 8, 2014).

[5] Waddell's signs are used to detect a nonorganic component of back pain. See Ashley Blom et al., A New Sign of Inappropriate Lower Back Pain, 84 Annals Royal C. Surgeons Eng. 342-43 (2002), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2504150/pdf/annrcse01639-0054.pdf. They include overreactions to the examination, widespread superficial tenderness not corresponding to any anatomical distribution, pain on axial loading of the skull or pain on rotation of the shoulder and pelvis together, severely limited straight-leg raising on formal testing in a patient who can sit forward with the legs extended, and lower-limb weakness or sensory loss not corresponding to a nerve-root distribution. Id. "Three or more positive signs are strongly suggestive of a non-organic component to the lower back pain." Id. In other words, as the ALJ noted (AR 30), Dr. Conaty observed "indicators of malingering," as did the medical expert (AR 27).

on the left.  (Id.)  He further noted that "[s]ensory examination demonstrate[d] stocking-type hypesthesia involving the entire left lower extremity."[6]  (Id.)  Dr. Conaty opined that Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally.  (AR 255.)  He included an additional limitation: "Standing climbing, stooping kneeling ect [sic] lmited too [sic] occasionally 20% work day."[7]  (Id.)

    C.   Analysis

The ALJ gave "great weight" to Dr. Conaty's opinion, noting that it included a limitation to "occasional standing."  (AR 31.)  Plaintiff asserts that the ALJ "rejected" that portion of Dr. Conaty's opinion because he did not include such a limitation in the RFC and failed to "articulate any legally sufficient rationale" for doing so.  (J. Stip. at 8; see id. at 6-8.)  The ALJ's RFC determination incorporated nearly all the limitations assessed by Dr. Conaty: Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally and could perform "climbing of ramps or stairs, stooping, kneeling or crouching no more than 20 percent of the workday."  (AR 27.)  But as Plaintiff notes, the RFC did not incorporate Dr. Conaty's assessed 20-percent limitation on standing; instead, the ALJ found that Plaintiff

---

[6] Hypesthesia is diminished sensitivity to stimulation. Stedman's Medical Dictionary 857 (27th ed. 2000).

[7] Given the stenographic sloppiness of Dr. Conaty's findings and the standing limitation's inconsistency with the results of his examination in that regard (see, e.g., AR 253-54 (Plaintiff had normal gait, could do partial squat, and had seated straight-leg raising of 80 degrees)), it is not clear that he even intended to so limit Plaintiff.  Absent any definitive evidence to the contrary, however, the Court assumes that he did.

could "stand and walk up to 6 hours in an 8-hour workday with normal breaks." (Id.) Because Dr. Conaty's assessed standing limitation was contradicted by the medical expert (AR 64) and nonexamining state-agency physician (AR 261), who opined that Plaintiff could stand or walk six hours in an eight-hour workday, the ALJ was required to give specific and legitimate reasons for discounting it, see Carmickle, 533 F.3d at 1164, which he did.

Although the ALJ did not specifically address Dr. Conaty's standing limitation, it is clear from other parts of his decision that he rejected it because it was unsupported by the record and inconsistent with other medical opinions. See Magallanes, 881 F.2d at 755 (ALJ need not recite "magic words" to reject treating physician's opinion; court may draw "specific and legitimate inferences" from ALJ's opinion, including from "paragraph discussing [other treating physician's] findings and opinion"); cf. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))). For example, in the paragraph immediately preceding his discussion of Dr. Conaty's opinion, in which he discussed the opinion of another examining orthopedic surgeon, Dr. Thomas Vangsness Jr., the ALJ noted that Plaintiff had alleged to Dr. Vangsness at the examination that she could stand for only two hours — or 25 percent of the day, greater than Dr. Conaty's opined 20 percent — because of pain and numbness in her lower

extremities.[8]  (AR 30-31; see AR 448.)  The ALJ specifically found that allegation "unsupported," however, noting that Dr. Vangsness observed no radiculopathy.[9]  (AR 31; see AR 454.)  Further, the ALJ accorded "significant weight" to Dr. Vangsness's opinion (AR 30-31), which did not assess any limitations on standing (AR 455-56 (Dr. Vangsness concluding only that Plaintiff should not "lift more than 40 pounds with the back" or "twist, turn, or bend on a repetitive basis with the back")).

The ALJ's findings concerning Plaintiff's credibility — which she does not challenge — also addressed the lack of objective medical support for a standing limitation as restrictive as the one assessed by Dr. Conaty.  Plaintiff testified at the hearing that she could stand for only 15 minutes because her legs hurt and went numb.  (AR 74-75, 83.)  But the ALJ discredited that testimony because it was inconsistent with diagnostic studies and clinical findings, which failed to establish a physiological basis for her alleged radiculopathy and peripheral neuropathy.  (AR 28-29; see AR 303-04 (in July 2009, treating physician ruling out radiculopathy after observing negative straight-leg raising and intact sensation in lower extremities), 336 (July 2009 EMG showing "normal" results), 339 (July 2009 nerve-conduction study showing "no evidence to suggest radiculopathy" and "essentially free of any contributing

---

[8] In another section of his report, Dr. Vangsness noted that Plaintiff alleged that she could not stand for more than an hour. (AR 448.)

[9] Radiculopathy is disorder of the spinal nerve roots. Stedman's Medical Dictionary, supra, at 1503.

neuropathy"), 359 (August 2009 EMG and nerve-conduction study showing "[n]o electrophysiological evidence to support distal peripheral neuropathy on the lower extremities"), 356 (July 2011 EMG and nerve-conduction study showing same).) The ALJ also found that Plaintiff was malingering. (AR 30 (finding that record contained "clear evidence that [Plaintiff] has consciously attempted to portray limitations tha[t] are not actually present in order to increase the chance of obtaining benefits").) Thus, the ALJ properly rejected Dr. Conaty's assessed standing limitation because it was unsupported by objective medical evidence. See §§ 404.1527(c)(4), 416.927(c)(4) (more weight given "the more consistent an opinion is with the record as a whole"); Batson, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings").

Further, the contrary opinions of the medical expert and state-agency physician, which were accorded "significant" and "great" weight by the ALJ, respectively (AR 30-31), constituted another specific and legitimate reason for rejecting Dr. Conaty's assessed standing limitation, see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that contrary opinions of other physicians "serve[d] as additional specific and legitimate reasons for rejecting" certain physicians' opinions).

Finally, even if the ALJ erred in failing to specifically address Dr. Conaty's standing limitation, the error was harmless. As discussed above, no objective medical evidence supported it, and he specifically rejected a standing limitation elsewhere in

his decision. Moreover, Plaintiff does not challenge the ALJ's acceptance of the other physicians' opinions that she could stand six hours, nor does she dispute the RFC determination. Thus, any error was "inconsequential to the ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

Plaintiff is not entitled to remand on this ground.

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 28, 2016         **JEAN ROSENBLUTH**
                                JEAN ROSENBLUTH
                                U.S. Magistrate Judge

---

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."